California Legislature requires that if a foreign company that does not transact business in the state be served, it must be served through one of eleven high-ranking executives in the company who have daily managerial control over the corporation, or through a person who has been specially appointed to receive service across the state. What are you referring to? What statute? That's 416.10, which is the service statute that was the basis of service in this case through Rule 4E1. Right, but we're already talking, we can narrow it down here to the general manager and what that means, right? And it's our submission that when you look at that word general manager, it comes at the end, it's one of eleven executives mentioned in a corporation and a person specially appointed. And we think that the best way to read that is in that context, it's in the context of a president, a vice president, a comptroller, people who exercise daily managerial authority over that corporation. And what they're saying is that even, they've applied it, the lower court has applied it to a subsidiary, even though it does not have the same type of daily managerial authority over its parent. Counsel, I appreciate your argument on that, but how do you deal with COSPER and with Yamaha Motor Company, which clearly don't agree with your position? Well, COSPER to begin with involved a different statute. It involved 2110 and the phrase there was general manager in the state. And both Brevelli, the Court of Appeal case in Brevelli and Bakersfield-Hacienda said that COSPER was not in point when referring to the different language of 416.10. And I think the way you deal with it is, and again, Yamaha didn't actually, didn't display any particular enthusiasm for COSPER. It said it should probably be revisited for the very reason we state, that that is not how you would normally view a general manager's position. Counsel, help me with this. This service law is supposed to be liberally construed, right? Do you agree with that? There is language, yes, in cases that say it should be liberally construed, but that has never been meant to depart from the terms actually used in the statute. Well, then you deal with the issue of, I gather that you all have conceded that if your client had not been served here, there would be no way to serve the ultimate public warehouse company in the state of California, is that correct? I disagree. I don't think that's something that was before the court and I don't think that is something that has been resolved. There is, behind this case, behind this order, there was a separate effort at alternative service and, you know, the court has not resolved that, that was denied as moot. In Virginia though, not in California, right? No, that would be service through F3 and that was something that was pending at the time when the court ruled on this and denied that further motion as moot and I don't think it's before the court because of that and that's something that hasn't been resolved. With Prentice Hall? Is that what you're talking about? No, that would have been a motion for alternate service under F3 where I think they were saying we serve the ultimate parent through courier and through their counsel here and that's separate with the approval of the court, they could do with anything that's not barred by international agreement. But there hasn't been any finding that this is the only, it's this way and that way. Okay, let's put that one aside for the moment. One of the things that was interesting to me, particularly after the Yamaha motor case is the fact that your client holds itself out apparently in its financial statements as being an integrated unit as a single financial statement refers to itself as the group, etc. What role, if any, should that play in our analysis of this case? I don't think that it should play a role. It is quite common for companies to present themselves, I mean each of the subsidiaries or many of the subsidiaries keep their own books, but they present a consolidated financial statement because that's what matters to the investors. That's the ultimate stock that you buy is PWC and so you want to know what its overall health is. So I don't think that that is really all that much. And furthermore, what the financial statements say is basically that the subsidiaries do what subsidiaries do, which is the business which the parent assigns to them. And if California wanted to allow somebody to be served through a subsidiary that was just acting as a subsidiary, they could have written a very different statute. But again, they put that term general manager after president, vice president, comptroller, all of those types of roles and that's why the court of appeals said in cases like Revelli and Bakersfield-Hacienda and in the General Motors Corporation v. Superior Court and again in Tang that what a general manager does is it manages the whole of the enterprise's scheme. It doesn't manage just this little segment that has been carved out for it. You know, all of these cases applying sort of... It could be that it manages the business in California though. Would that be enough? It would be enough under 2110. That's a different statute. That's the statute that was at issue in Cosper. And but I mean, I think that it's very telling that that's not the language that they used in this different statute. It makes sense if you're dealing with a company, a foreign company that does business here, that's what 2110 is, that you would look to what the general manager does in the state, whether it's a general manager in the state. But you know, when we're talking about the foreign corporation, again, all you have is the general manager. The cases that are applying like Yamaha that apply the general manager to subsidiaries are a relatively recent phenomenon. I mean, Cosper itself involves service on a person. Cosper doesn't provide authority for using a subsidiary as a general manager. And you have, you know, in the face of that, you have so many other cases, including Tang, where they say a general manager means what you would expect it to mean, that somebody with managerial control over that whole corporation, which in this case means the parent. And one thing I wanted to point out, Judge Smith, is that even though you have the liberal construction rules, Tang, the same argument was made exactly to Tang, and they said it's not liberal construction basically doesn't allow you to vary the terms in the statute. And it is not substantial compliance to serve a distinct legal entity, which is what is going on when you're trying to serve a parent through a subsidiary. Is PwC doing business in California? PwC itself is not doing business in California. It does not have, it's not doing business in the United States, period. Have you essentially rendered the general manager term of 416.10B a nullity as to companies that are not doing business in California? Sorry, let me say it differently. Have you rendered a nullity as to companies that are not based in California? I'm trying to think of when you'd ever have a general manager of a foreign corporation who's managing the way you're saying in that kind of situation. It seems like you're saying they have to do business here for it ever to work. No, I don't think that's right, because I mean, well, I guess I understand your point, but it would be directing the work. I think that you could have, to begin with, our strong submission is that it has to be a natural person, but going past that and saying it can be a subsidiary, you can imagine a subsidiary that is essentially running the affairs of its parent, which is, say, a holding company. I don't know that it would then be doing, itself be doing business, the parent would be doing business in California, simply because the subsidiary here was saying, over there in Kuwait, do this. I don't think that would mean that they were doing business in California for that reason. So it's like some managers working remotely, essentially. Exactly. I mean, you can imagine a circumstance like a mutual fund, where there's a holding company that holds all the assets, and the management company decides how it's going to be run, but they do it all remotely. There is potential where they would still not be doing business in California, because it would be the local subsidiary that is the actual managers, telling the parent in Kuwait, this is how you run the, this is how you operate. In addition, I mean, one thing to keep in mind is, when you read the statute as a whole, California courts do follow the nociter ausocius maxim, and you have this list of natural persons who oversee this, oversee the corporation, the president, vice president, CFO, comptroller, things like that, or general manager. And because of that, this is again, before these relatively recent cases that apply it to corporations, you have Dill v. Bergquist, which quotes the judicial conference report, which is described in Dill v. Bergquist, this is quoted in our reply brief, saying that that was the legislative history for this provision, and it describes it, we actually quote this, that service on a corporation can only be accomplished by serving some individual as its representative, and it describes 416.10, the statute, as it says it enumerates the individuals. So, again, it's very powerful and very telling stuff, that's a 1994 case, which was one of the cases that was decided before that provision 416.10 was most recently reenacted, which my understanding is 2006. And Yamaha is to the contrary, right? 2009, I believe it is, but again, Yamaha, it felt it was bound by COSPR, but again, we have Bakersfield, Hacienda, and Brovelli saying that COSPR was not in point, that is the exact language that they used, because it involves a different statute. So it's not exactly on point, because you have a different statute, the question is whether the reasoning is persuasive. What about the reasoning of COSPR do you think is wrong? Well, to begin with, COSPR involves service on an individual, so it doesn't even shed light on a question about whether it can be an artificial person. But in addition, it said that you look to, I'm sorry, in addition, COSPR said it is kind of the fountainhead of this idea that you can look to essentially the relationship to advance in deciding whether it is a general manager in the state. And I think that it's a very different thing to say you are the general manager in the state if you do the stuff that's relevant here. There it was, they sold the guns that were supposedly defective and blew up and blinded the police officer. And it's a very different thing to say, sure, you're a general manager in the state. And to conclude from that, that you are also the general manager of Smith & Wesson. It's one thing to say you're the general manager in the state of Smith & Wesson if you sell its guns here. It's a very different thing to say you are a general manager of Smith & Wesson because you sell its guns in California. And in addition to that, as we said, COSPR is a case, Yamaha said it should be revisited because it is not a very textual based opinion and running behind it is the idea that if we don't rule this way, they're going to be immune. And since that time, since COSPR was decided, as we note in our brief, California has enacted service through mail and the United States has entered into the Hague Convention. So you don't have the same issue at all of immunity that animated the COSPR court. And if there are no questions, I would like to reserve the remainder of my time for questions. Counsel, let me just ask you before you sit down one kind of tangential question and it's more out of curiosity. Why didn't your client assert lack of personal jurisdiction as a defense here? Um, you know, my understanding of it was probably because the contract was signed in Philadelphia and you know, at that point, the main defense at this stage was the failure of service. And so it simply wasn't asserted at the time that we made the answer, I think the Second Amendment complaint. But it leaves us in a bit of an odd situation, right? Because there hasn't been discovery on whether your client is actually doing business in California, has there? But I don't think that there's any dispute about whether PwC is doing business in California. And there have been, you know, there have, there are declarations that are in the record and I don't think anybody's disputing that PwC, the parent, is not doing business in California or in the United States. Any more further questions? Other questions for the moment? Okay, thank you, counsel. We'll hear argument for the appellee. Thank you, your honor. May it please the court, counsel, Gerald Robinson for Relator John Lee Miller. In this case, PwC urges two rigid requirements for substitute service of process. First, that the, that under 416.10, the term general manager requires service on an individual that's the head of the overall corporation. In this case, that corporation is clear off in Kuwait. The second rigid requirement they urge is that the California agent for service of process have some connection to the facts of the case. And for that, they cite to Tang. Our position is that the California Supreme Court would reject both of those positions. And the reason is because they conflate principles of personal jurisdiction with principles of substitute service of process. And at this point, your honor, I'd like to walk back some broad statements in my brief, suggesting that some of the case law also conflated those two issues. I would state for the record that I believe it's only Tang that conflates those issues. And then the arguments of PwC construing the other cases in order to try and support Tang for its position here. Counsel, can I ask you one question about Tang? Yes. Tang is an unpublished opinion. Yes, your honor, it is. Omaha is published. What, what, well, I say, what dignity should we give Tang? Zero. Even if its reasoning is persuasive? Its reasoning is utterly unpersuasive. Your honor, in that case, the California appellate court confused the fact that there was no, no personal jurisdiction. In fact, that issue was tabled. The suit was against a German parent company concerning wrongful termination of an employee in Taiwan. They tried to sue in California under international shoe. If you're trying to get specific personal jurisdiction, you need some connection between the facts, the defendant, and the forum state. That's in the Supreme Court's recent Bowman decision. And there was no evidence of that before the Tang court. That obviously troubled the court. But they conflated that with what's necessary for service of process. For substitute service of process, the California Supreme Court, since 1930, in the roll decision, has always followed the principle that it took from New York case law, that substitute service of process is valid if it's made upon an agent of sufficient character and rank to make it reasonably certain that the foreign corporation will receive notice. And a key piece of that is whether that agent, whether it's a subsidiary or an individual, provides a channel of continuous business to that parent company. In other words, does it create a channel of communication, making it reasonably certain that that lawsuit will get communicated to the parent company? So I think COSPER has two prongs. One is, is it going to reasonably be communicated? But this other is the channel of business, which you're kind of lumping the two together. But in the cases that are being discussed here, it seems like in almost all of them, there's some sort of product being sold by the parent through the sub or through the man, you know, the representative in the state. Some sort of business being conducted through. And I'm not sure what you're saying the business being conducted through this sub is that's equivalent to any of those other cases. Can you explain that part? In this particular case, Your Honor, or did you talk about some other? No, no. In your case, what is PWC doing through this sub in California? Your Honor, PWC in this in this case, the sub agility logistics is held out as its U.S. arm. It's U.S. headquarters for its logistics operations, the same type of logistics operations that were conducted or that were at issue in the contracts here, including defense logistics. And, Your Honor, I think a key distinction here is that the juror, the personal jurisdiction in this case is under the False Claims Act that does not require that there be some connection between the forum and the facts. It only requires that the the the defendant company be transacting business in in the forum forum state. Your opposing counsel said it's uncontested that PWC is not doing business in California. It sounds like you're contesting that. We can we contest that. We believe that the district court here found otherwise that the district court, in fact, found based on this based on PWC's financial statements based upon its website, holding it holding out agility logistics as its U.S. headquarters, stating that it operates as an integrated whole and has control over its its subsidiaries, including agility logistics. So are you making an alter ego argument? Would you? No, no, no, no, no, not at all. We're not saying that that the in fact, to the contrary, we're we're we're saying that the level of agency here for substitute service of process is way down here. The the the level of agency necessary for alter ego is much higher. It's a much higher burden. And Cosper, in fact, illustrates the fact that you don't need to come anywhere near that that higher burden for alter ego in Cosper. The agent that was served wasn't even the the distributor that sold the gun that exploded. It was sold by defendant Pitt. And the service of process was on a freelance casual distributor of independent distributor of firearms. But let me ask you this, just to kind of get to the chase on this, looking at Judge Guilford's findings, which I gather are we have to give some deference to besides the integrated financial statements, combined trade name and so on. But then he indicated and part of this is in the brief that PwC admitted that agility is, in quotes, one component of a large global enterprise. Also, that it's one of the world's largest integrated logistics provided with more than 20,000 employees and operations in 100 countries. And the website confirms that agility logistics in the United States is the United States arm of that enterprise on a 15 of the record. The district court found one agility logistics provides a channel for the continuous flow of PwC's business into the state and to service upon agility logistics was reasonably certain to prize PwC of the action. What, if anything, are we to make of Judge Guilford's findings to that effect? I think the court is to make of that that the agility logistics is more than just a wholly owned subsidiary standing alone doing business by itself. That it provides a channel of communication. I guess what I'm asking here, counsel, is what deference do we owe the district court on that finding? It's an abuse of abuse of discretion standard, Your Honor. Okay, let's find out. If we disagree with you about 416.10, would you pursue 2110? And 110, Your Honor, remind me. So that's doing business in the state. So if we think you haven't shown enough to meet what we think is the definition of general manager under 416, would you want to have an opportunity on remand to pursue 2110, which is the provision for service on an entity that is doing business in the state? Yes, Your Honor, and we also have pending at the district court a motion for alternative service, either upon PwC's counsel in this country or other alternative means that the court might approve. And so, yes, we would like the opportunity. Is there discovery that you would need to take to support your arguments under 2110? Your Honor, I believe that we would like to have that opportunity to conduct discovery. There was not discovery conducted on the service process issue prior to this appeal. Did you request discovery on this issue? No, we did not. How do you conduct discovery on somebody you haven't served? That's a bit of a dilemma, Your Honor. Would we be able to compel them to appear for a deposition? I'm not sure procedurally how we would do that. Uh, is that why the legislation says that the statute is to be construed liberally? Because all of the normal processes of law seem to me to be of little effect, if any, if a person is not served. That would stand to reason, Your Honor. It isn't the primary point that Cosborne and Yamaha make. The key is that the service be communicated, that there is a clear understanding that you've been served, you need to respond. And then, of course, you've got the argument, the person jurisdiction issue, which my colleague raised with opposing counsel earlier, which is an entirely separate issue. That's a totally separate issue, and that's what the Supreme Court's wrestled with. Some of the recent case law. Yes, yes, I would agree with that, Your Honor. And I think the California Supreme Court and the California Appellate Courts and the Federal District Courts have consistently gotten it right and focused on that communication aspect. And is the relationship between the agent and the foreign company such that there is evidence of a channel of communication? Yamaha and Kachatrian both stand for the proposition that a subsidiary in California, that's the American face of a foreign company, is sufficient to evince that channel of communication. Can you think of any of the cases, the California cases cited by your opponent, published or non-published, where the general manager served was anything other than an individual? The Kasper case, well, that was, I'm sorry, the Kasper case was an individual. The Kachatrian and Yamaha cases, it was both serviced upon a subsidiary. So there was not... And what happened in Kachatrian? Kachatrian, the service was held to be valid. That's not a California case though, right? Kachatrian, my... Federal District Court. Federal District Court, yes, Your Honor. Central District, California. Yamaha, it's California Court of Appeals. What about the issue, Counsel, let's just assume for a moment, whatever we think of it, that we say, oh, this is a California issue. Should this be certified to the California Supreme Court? I don't believe it would be necessary, I believe... Would not be necessary? No, I do not. I think the California Supreme Court in Kasper has been clear that their general manager argument being equated to a person high up in the company is not given currency when you're dealing with a foreign corporation. That language, that textual changes over time have been efforts by the California legislature to impose some sort of rigid requirement on how the service of process is made. But the California Supreme Court has always gone back to that principle. What's the character and rank of the agent? Does it create the... What is your response to opposing counsel's argument that the state legislature has now enacted new legislation that permits service by mail that really obviate this question? It doesn't obviate this question. It simply creates other avenues that might be used in appropriate circumstances. In this case, the PWC is in Kuwait. We don't believe service through the Hague Convention is possible due to a Kuwait appellate opinion. And so the focus here is to try and achieve service through 416. Any other questions by my colleagues? Nope. We thank you very much for your argument and opposing counsel has... If you mentioned the language from COSPER about the key to services communication and there is whether a sufficient stature that it would be likely to be communicated. Again, that was not a free-floating requirement for service. The court used that as a way of saying whether it was a general manager in the state. And it said it would be because they were involved in selling the very firearms that were at issue in that case. They would have open lines of communication and would presumably communicate it. Here, on the other hand, if you look at even at the relator's own complaint at page A86 of the excerpts of record, it talks about how global integrated logistics, which again the company at issue here is supposed to be the US headquarters for, is a civilian thing. It serves clients in chemical, consumer products, healthcare, retail, and technology industries. In addition, Agility's defense and governmental services units specialize in providing logistics services for the US military around the world, but primarily in the Middle East. So again, this is an awful lot like Tang, where you have a company that does civilian logistics and that's what Agility Logistics is said to do. And whether or not they would be the person to communicate to say, hey, you remember that contract you signed with the government for providing services in the Middle East? It's a very different thing. And I mean, if you are going to impose on a company, a multinational corporation, the burden of being served through all of its subsidiaries, it is a very daunting prospect how to manage litigation. I mean, especially when you consider that the subsidiaries at issue here, Agility International Logistics, is a fifth tier subsidiary. So there are four parents above it who supposedly could be served under this method. And the same with Agility Logistics Corporation, fifth tier subsidiary. So I mean, the prospects for service are daunting. And when the idea is to provide a service of process that is, you know, reasonably calculated to provide notice, the idea that you're going to, someone is going to receive a thing when they're in the civilian logistics business, and they're going to look at a complaint involving, you know, something that happened half a world away. It's just not clear that... So is there any way that service could have been affected for this key TAM suit? I think that that's not before the court. There's other methods that are still pending that, you know, the 4F3, you know, there's, it still has not been litigated in this case, whether Hague service actually would be a possibility. But, you know, all that's before the court now is whether this general management thing applies to a subsidiary. And for the reasons that we've explained in our brief... It's just hard to figure out exactly what's going on here, because it seems like maybe it's a problem if it can't be served anywhere. If you're saying, well, there are these other ways, then if one of those other ways is going to work, then I'm not sure why so much effort is being put into fighting this one way, because it's ultimately going to happen. If this company, it'd be great to establish a proposition you cannot serve through a subsidiary when you have all of these, when there are subsidiaries in 120 countries in the world for PwC. And we don't want it to be the case that you can serve the ultimate parent or any of the intermediate parents through this subsidiary here. And if you have... But why not? I mean, if you don't dispute that you got noticed, then what's the problem with that? Actual notice has never been the point of service. You have to... Because the idea is that in the run of cases, you want to have a mechanism in place that people will actually get notice. And so what we are trying to establish as a multinational corporation is a method of service that will provide notice in the run of cases. You know, the fact that we got notice in this one particular case through essentially happenstance doesn't provide a very good way of running a multinational corporation. You need a service of process that will ensure that all the GEs of the world and all the Boeings of the world aren't going to be served through a subsidiary in another country. But the reality is here, you clearly were, you got notice, you appeared, fought valiantly to uphold your position, right? But that has, again, actual notice has never been the standard. Actual notice was rejected in Tang. Period cases that have said that actual notice is not enough. We cited the American Express insurance case. I get that. I'm just, we are dealing here with a situation where we have some findings by a respected district judge. We have very able counsel on both sides dealing with an important issue. I'm just pointing out that you got notice. You appeared. If this had been a default judgment, I think it might raise very different issues. But in this case, you clearly did appear and right away. But again, actual notice has never been the case. In Tang, they said that there was some indication that they didn't dispute that they had actual notice, even though they defaulted there. Because after all, what does a company to do when it gets a notice that doesn't look like it has anything to do with it? They're under no obligation to pass it up the chain. Essentially, this happened through happenstance, just because we happen to represent the subsidiary and the parent. But there's a lot of cases where that's not the case. We represent a lot of subsidiaries who are not the parent and vice versa. And you think it is possible that those subsidiaries would not tell the parent if they received service? I do think it's possible. I mean, anyone who has worked in the Justice Department knows that you might get something for your for the wrong branch and it goes into a black hole that's never heard from again. And I think the same thing can happen when you're talking about a multinational corporation with 550 offices in 120 countries that you serve a fifth tier subsidiary. They might just look at it and say, surely I don't have to do anything with this. This doesn't even involve us. It involves a contract executed in the Middle East. So I think it's entirely possible that that will not be something to be passed up the chain. They may not even know who to pass it up the chain to. Any further questions by my colleagues? We thank both counsel for their argument. A very interesting case, good arguments on both sides. We appreciate it. The case just argued is submitted and the court stands in recess for the day.
judges: M. Smith, Watford, Friedland